# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5368 | **DATE** | 9/27/2004 |
| **CASE TITLE** | Premier Capital Management vs. Larry Cohen, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Order. Defendant Flanagan's motion to dismiss [14-1] and [10-1] is granted in part and denied in part. Motion of Xentex and other defendants to dismiss the second amended complaint [23-1] is granted in part and denied in part. Plaintiffs may file an amended complaint within 30 days of the entry of this order to correct the deficiencies in their claims under the Virginia Securities Act.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 29 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| X | Docketing to mail notices. | | rbf | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| RJ/TL | courtroom deputy's initials | 2004 SEP 28 PM 2:00 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PREMIER CAPITAL MANAGEMENT, )
L.L.C., et al., )
)
                Plaintiffs, )   Case No. 02 C 5368
v. )
)   Judge Joan B. Gottschall
LARRY COHEN, et al., )
)
                Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Premier Capital Management, LLC ("Premier Capital"), TMB, LLC, and Xen Investors, LLC have sued defendants Xentex Technologies ("Xentex"), Xentex's individual officers and directors (Larry Cohen, Brian Flanagan, Wan Hee Kim and Michael Turcotte), a Xentex shareholder (Ron Falese), Northview Bank and Trust, and the bank's president Blair Robinson, claiming that defendants violated federal securities laws, as well as several state statutes and common law prohibitions, when they fraudulently induced plaintiffs to invest in Xentex.[1] Among other claims in their prodigious 39-count complaint, plaintiffs have brought several state law claims against Xentex's officers and directors for (1) violations of the Virginia Securities Act ("VSA"), Va. Code Ann. § 13.1-522, (2) common law fraud, (3) breach of fiduciary duty, (4) negligent misrepresentation (against defendant Turcotte), and (5) accounting malpractice (against Turcotte). Before the court are two motions to dismiss: the motion of defendants Cohen, Kim, Turcotte and Falese (the "Xentex defendants") to dismiss plaintiffs' state law claims, and defendant Flanagan's separate motion to dismiss plaintiffs' state law claims.[2] For the reasons stated below, both motions

---

[1] After defendant Xentex filed for Chapter 11 bankruptcy, plaintiffs' claims against Xentex were voluntarily dismissed without prejudice.

[2] In its August 14, 2003 Order, the court separately ruled on defendants' motions to dismiss plaintiffs' federal securities fraud claims.



to dismiss are granted in part and denied in part.

## BACKGROUND

According to the complaint, plaintiffs made two investments in Xentex, the first through a stock purchase, the second in the form of a promissory note. Xentex, through its CEO Jeff Batio and its Vice Chairman and Executive Vice President Douglas Tucker, first presented plaintiffs with an opportunity to invest at a meeting on November 1, 2000. At that time, Xentex was in the process of developing and launching a flip-pad computer known as the Voyager. During that meeting, plaintiffs received an Information Statement dated November 1, 2000 (the "Information Statement"), which contained numerous representations relating to Xentex, the Voyager computer, Xentex's plans for launching the Voyager into the market, and the ability of Xentex's supplier, Korean Data Systems ("KDS"), to finance, manufacture and service necessary hardware. In reliance on the representations made in the Information Statement, as well as certain oral representations made by Batio and Tucker at the November 1st meeting, plaintiffs invested more than $3.3 million in Xentex stock. Subsequently, on June 4, 2001, after certain additional representations by various members of Xentex's Board of Directors, plaintiffs loaned Xentex $650,000 in return for a promissory note. Plaintiffs now claim that the representations made in the Information Statement, the oral representations made at the November 1st meeting, and various other representations made in connection with the execution of the promissory note were false, and that, as a result, defendants have violated federal and state securities laws and breached various common law duties. Plaintiffs claim that defendants hid Xentex's deteriorating financial condition from plaintiffs, thereby obscuring the true value of plaintiffs' investment.

## ANALYSIS

In evaluating a motion to dismiss, the court generally accepts all of plaintiffs' well-pled allegations as true and draws all reasonable inferences in plaintiffs' favor. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Ordinarily, a plaintiff need only plead

facts sufficient to place defendants on notice of the nature of the claims against them and the court will not grant the motion to dismiss unless it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); Fed.R.Civ.P. 8(a).

However, when pleading claims of fraud, plaintiffs must do more than merely place defendants on notice of their claims. Under Rule 9(b), a plaintiff must plead "the circumstances constituting fraud... with particularity." *In re HealthCare Compare Corp. Secs. Litig.,* 75 F.3d 276, 281 (7th Cir. 1996). Specifically, the complaint must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990). In other words, a plaintiff must allege "the who, what, when, where and how" of the fraud.[3] *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990).

Before turning to the substance of defendants' motions to dismiss, the court must determine the appropriate pleading standard by which to measure plaintiffs' claims. As they must, plaintiffs agree that their common law fraud claims are subject to Rule 9(b)'s particularity requirements. However, plaintiffs argue that their remaining state law claims are subject to the less stringent notice pleading standard of Fed.R.Civ.P. 8(a) because fraud is not an element of those claims. Plaintiffs' argument ignores the fact that their VSA claims and breach of fiduciary duty claims are each premised on the same factual allegations – that defendants fraudulently induced plaintiffs to invest in Xentex by knowingly making false representations regarding Xentex's financial condition, current

---

[3] Defendants argue that the specificity requirements of Fed.R.Civ.P. 9(b) match the pleading requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"),15 U.S.C. § 78u-4(b)(1)-(2). That is not the case. The PSLRA imposes two requirements not mandated by Rule 9(b). Under the heightened PSLRA standard, plaintiffs must (1) "specify each statement alleged to have been misleading," and the "reason or reasons why the statement is misleading," and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1)-(2). The "why" and "strong inference of scienter" requirements go beyond what is called for under Rule 9(b).

performance and business prospects. Although plaintiffs couch their VSA and breach of fiduciary duty claims under different legal theories, allegations of fraud lie at the core of each claim and, therefore, those claims are subject to Rule 9(b). *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966) (holding that if a breach of fiduciary duty claim is based on allegations of a "scheme to defraud," the claim must be pled with particularity); *Stephenson v. Hartford Life and Annuity Ins. Co.*, 02-C-3917, 2003 WL 22232968, *5-6 (N.D. Ill. Sept. 26, 2003) (subjecting plaintiffs' claims to Rule 9(b) standard because, although pled under different legal theories, each claim arose from the same allegations of fraud). With that standard in mind, the court will separately evaluate plaintiffs' claims.

I.   **Plaintiffs' Claims Under The Virginia Securities Act**

As discussed above, plaintiffs' claims under the Virginia Securities Act must be pled with particularity pursuant to Fed.R.Civ.P. 9(b) as they are based on allegations of fraud. Plaintiffs' response briefs state their VSA claims quite clearly: plaintiffs argue that (1) Xentex made several specific misrepresentations in the sale of securities in violation of VSA § 13.1-522(A) and (2) Xentex's individual board members are liable for Xentex's misrepresentations under Section 13.1-522(C). However, plaintiffs' complaint is not so plain. Plaintiffs argue in their brief that their VSA claims against the individual directors spring directly from their VSA claims against Xentex. However, their complaint does not provide such a convenient cross-reference and the specific misrepresentations at the heart of each VSA claim are often unclear. For example, the VSA claims against Turcotte purport to hold Turcotte jointly and severally liable "for the conduct alleged in this Complaint" without specifying the "conduct" at issue or referring to any "primary violation" by Xentex. Rather, defendants and the court are left to comb through the remaining 116 pages of the complaint to determine the potential universe of misrepresentations for which Turcotte is allegedly liable under the VSA.

Moreover, plaintiffs' allegations regarding their theory of liability are often ambiguous. In their brief, plaintiffs clearly state that, as "control persons," Xentex's directors are liable for

misrepresentations that Xentex made to plaintiffs in the course of selling shares of Xentex. However, plaintiffs' VSA counts often focus on allegations of wrongdoing by the individual defendant – including alleged misrepresentations that appear unrelated to plaintiffs' November, 2000 purchase of securities. Plaintiffs' VSA counts rarely mention any misconduct by the alleged "primary violator," Xentex. For example, plaintiffs' VSA counts against Turcotte (Counts XI and XII) appear to be based on the "representations of Defendant" and list several specific misrepresentations and GAAP errors made by Turcotte. Counts XI and XII make no mention of any VSA violations by Xentex and do not refer to specific misrepresentations made by Xentex. At the end of Counts XI and XII the question remains: do plaintiffs seek to hold Turcotte directly liable under the VSA only for his own misrepresentations or do plaintiffs seek to hold him liable as a "control person" for Xentex's misrepresentations (which presumably include misrepresentations made by Xentex's individual directors)?

Plaintiffs must plead the "who, what, when, where and how" of the fraud at the heart of each VSA claim. In other words, each defendant is entitled to know (1) the specific representations that form the basis of the claims against them, and (2) plaintiffs' theory for holding that defendant liable for those misrepresentations. As currently pled, plaintiffs' complaint falls short of that standard. Plaintiffs must either enumerate the specific misrepresentations that underlie each count or provide convenient cross-references that allow each defendant to locate those alleged misrepresentations. Moreover, the basis of each defendants' liability, whether as a "primary violator" or "control person" must be made clear. Based on the relative clarity of plaintiffs' briefs, the court believes that plaintiffs are fully capable of remedying the deficiencies described herein. Plaintiffs' claims under the Virginia Securities Act (Counts XI, XII, XX, XXI, XXVII, XXVIII, XXXI, XXXII, XXXIII, and XXXIV) are, therefore, dismissed without prejudice. Plaintiffs may amend their VSA counts in

accordance with this opinion.[4]

## II. Plaintiffs' Common Law Fraud Claims

In contrast to plaintiffs' VSA claims, plaintiffs' common law fraud claims meet the particularity standard of Fed.R.Civ.P. 9(b):

For example, in Count XXIII against Flanagan, plaintiffs specifically identify (1) the person making the misrepresentation (Flanagan individually and as co-author of the Information Statement), (2) the time, place and content of the alleged material misrepresentations of fact (five misrepresentations appearing in the Information Statement created, in part, by Flanagan, four misrepresentations made during a phone conversation with plaintiffs' principals and four material omissions of fact that allegedly should have been disclosed to plaintiffs during that phone conversation), and (3) the method by which the misrepresentations were communicated to plaintiffs (in the Information Statement and by phone conversation). Count XIII against Turcotte and Count XXX against Kim are equally specific in identifying the misrepresentations underlying plaintiffs' claims and plaintiffs' basis for holding defendants liable for those misrepresentations.

Defendants argue that plaintiffs' claims, nevertheless, must be dismissed because cautionary language contained in the Information Statement precludes a finding that the Statement contained material misrepresentations of fact. *See Harden v. Raffensperger, Hughes & Co., Inc.*, 65 F.3d 1392, 1404 (7th Cir.1995) ("[C]autionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law"). The so-called "bespeaks caution" doctrine precludes liability for predictions or opinions if the speaker includes sufficient cautionary language tailored to the risk involved. *See id.* However, the "bespeaks caution" doctrine does not, as a matter of law, insulate misrepresentations of "hard facts" from liability. *See Harden*, 65 F.3d at 1406.

---

[4] Since discovery is still open and plaintiffs' claims under the VSA are strikingly similar to their other fraud-based claims, the court finds that minor amendments by plaintiffs to clarify their claims under the VSA will not unduly prejudice defendants.

Plaintiffs allege, *inter alia*, that Xentex's Information Statement (1) misstated Xentex's then-current assets, (2) falsely indicated that Xentex had made necessary preparations to launch the Voyager computer, and (3) falsely stated that KDS has supplied $40 million in product financing and had agreed to open a service depot in Silicon Valley and pay for remaining tooling and product development costs.[5] Those are not "soft" predictions but, rather, alleged misstatements of then-existing fact. The "bespeaks caution" doctrine does not as a matter of law negate the materiality of those statements. *Id.* at 1406; *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 192 F.Supp.2d 852, 870 (N.D.Ill. 2002).[6]

For his part, defendant Flanagan argues that "this court already has subjected the fraud allegations of the Complaint to the Rule 9(b) analysis" and should dismiss plaintiffs' state law claims for the same reasons it dismissed several of plaintiffs' federal claims. However, the court has not evaluated plaintiffs' claims under the Rule 9(b) standard. In addressing the federal securities claims against defendants, the court evaluated plaintiffs' allegations under the more stringent PSLRA standard, dismissing several of those claims based on plaintiffs' failure to plead facts (1) detailing the reasons why defendants' misrepresentations were false, and (2) giving rise to a strong inference that the defendant acted with the required state of mind. As discussed above, those two PSLRA requirements are above and beyond what is called for under Rule 9(b). In their common law fraud claims, plaintiffs need only plead "the who, what, when, where and how" of the fraud. Plaintiffs have met that standard; nothing more is required. Defendants' motions to dismiss plaintiffs'

---

[5] The factual circumstances surrounding alleged misrepresentations other than those appearing in the Information Statement – such as financial projections provided to plaintiffs – are undeveloped. Defendants may revisit their "bespeaks caution" argument with regard to those statements at summary judgment.

[6] Defendants also argue that plaintiffs did not, in fact, rely on the Information Statement in making their investment decisions but, rather, relied on their own due diligence and a separate document called an "offer to invest." Should the undisputed facts support defendants' argument, they may file for summary judgment on that basis at the close of discovery. However, the court will not engage in such a fact-based inquiry at this stage of proceedings.

common law fraud counts (Counts XIII, XXIII, and XXX) are, therefore, denied.

### III. Plaintiffs' Breach of Fiduciary Duty Claims

Plaintiffs claim that Turcotte, Flanagan and Kim breached their fiduciary duty to plaintiffs by fraudulently inducing plaintiffs' initial purchase of Xentex stock and their subsequent loan of additional funds to Xentex. Plaintiffs also have sued Ron Falese for aiding and abetting an unrelated breach of fiduciary duty by Xentex's CEO, Jeff Batio. Defendants argue that plaintiffs' claims must be dismissed for failure to adequately plead the existence of a fiduciary duty. Under Delaware law, officers and directors of a corporation owe a fiduciary duty to the shareholders of that corporation. *See Malone v. Brincat*, 722 A.2d 5, 14 (Del.1998). However, that duty does not emerge until there is an actual director-shareholder relationship. Therefore, to the extent that plaintiffs' breach of fiduciary duty claims are based on defendants' conduct prior to plaintiffs' purchase of Xentex stock, those claims must be dismissed. On the other hand, plaintiffs <u>have</u> adequately pled the existence of a fiduciary duty with regard to defendants' conduct <u>after</u> plaintiffs' initial stock purchase.

Defendants argue that, even if defendants owed plaintiffs a fiduciary duty, plaintiffs' breach of fiduciary duty claims must be dismissed because they are based on a derivative harm – *i.e.* a harm that all shareholders incurred as a result of an injury suffered by the corporation. In one instance – plaintiffs' claim against Falese for aiding and abetting a breach of fiduciary duty (Count XXXV) – defendants' argument is sound. Plaintiffs allege that, as Xentex approached insolvency, Falese essentially conspired with Xentex's CEO Jeff Batio to shield a portion of Xentex's assets from its creditors, thereby impairing Xentex's ability to pay its subcontractors and depleting the value of Xentex's assets. That alleged misconduct does not reflect any unique injury suffered by plaintiffs but rather an injury derivative of the harm to Xentex that affected all of Xentex's shareholders (and now affects all of its creditors). Therefore, if any claim against Falese exists, that claim belongs to the corporation – or, in this case to the corporation's trustee – in the first instance. *Malone*, 722 A.2d at 14. Plaintiffs' claim against Falese for aiding Batio's breach of fiduciary duty (Count XXXV) is,

therefore, dismissed.

However, plaintiffs' remaining claims for breach of fiduciary duty (Counts XVI, XXII, and XXIX) are not pled as derivative claims. In those claims plaintiffs allege that they suffered a unique harm; they allege that Turcotte, Flanagan and Kim knowingly made false misrepresentations directly to plaintiffs to induce their investment in Xentex. As pled, Counts XVI, XXII and XXIX do not derive from injuries suffered by Xentex's shareholders at large. If the facts ultimately do not support a finding that plaintiffs suffered a unique harm, defendants may move for summary judgment on that basis. However, dismissal of plaintiffs' breach of fiduciary duty claim in Counts XVI, XXII and XXIX is not appropriate at this stage of the proceedings.

### IV. Plaintiffs' Claim For Negligent Misrepresentation Against Turcotte (Count XIV).

Unlike the rest of their claims, plaintiffs' claim for negligent misrepresentation against defendant Turcotte need only meet the notice pleading standard of Fed.R.Civ.P. 8(a) since it is not premised on deliberate fraud. *See Guaranty Residential Lending, Inc. v. International Mortg. Center, Inc.*, 305 F.Supp.2d 846, 864 (N.D.Ill. 2004). In other words, plaintiffs need only plead sufficient facts to place Turcotte on notice of the nature of the claims against him.

To the extent that plaintiffs wish to state a negligent misrepresentation claim under Illinois law, plaintiffs have met the Rule 8(a) standard. Plaintiffs have pled that (1) Turcotte "was in the business of supplying information for the guidance of others in their business dealings," (2) Turcotte negligently prepared financial statements tendered to plaintiffs which contained inaccurate information regarding Xentex's financial condition and production capabilities, (3) Turcotte provided financial information directly to plaintiffs to guide them in their investment decisions, and (4) plaintiffs were damaged as a result of those negligent misrepresentations. Plaintiffs' allegations are sufficient to place Turcotte on notice of the nature of the claims against him. Nothing more is required under Rule 8(a).

Defendants point out that, to the extent that Virginia law applies, plaintiffs' claim must be dismissed because Virginia law does not recognize a cause of action for negligent misrepresentation. While defendants are technically correct, their argument has no practical effect: Virgina law recognizes a virtually identical action for "constructive fraud" which is established upon proof "that a false representation of a material fact was made innocently or negligently, and that the injured party was damaged as a result of his reliance upon the misrepresentation." *Layman v. Friedlander*, No. 211047, 2003 WL 22785038, *3 (Va.Cir.Ct. Oct. 3, 2003). The court finds that, to the extent Virginia law applies at all, Count XIV states a claim for constructive fraud under Virginia law.[7]

## V. Plaintiffs' Claim For Accounting Malpractice Against Turcotte (Count XV).

Plaintiffs have placed Turcotte on notice of the nature of their claim for accountant malpractice as well. Nevertheless, plaintiffs' malpractice claim must be dismissed because, unlike most of plaintiffs' other claims, plaintiffs' malpractice claim alleges a derivative injury, *i.e.* an injury that primarily impacted the corporation and its shareholders as a whole. Count XV is not based on defendants' deception of plaintiffs but, rather on Turcotte's mismanagement of Xentex's accounts – *e.g.*, Turcotte's failure to pay Xentex's bills in a timely manner and his failure to stop Xentex's Board of Directors from "loot[ing] the company." In other words, plaintiffs have alleged that Turcotte played a role in driving Xentex into insolvency. That is not the sort of "unique injury" that would allow plaintiffs to bring a direct claim against Turcotte. To the extent a malpractice claim against Turcotte exists, plaintiffs may bring that claim only after complying with the requirements of Fed.R.Civ.P. 23.1. Plaintiffs' malpractice claim (Count XV) is, therefore, dismissed.

---

[7] Defendants argue that plaintiffs' negligence claim must be dismissed for the additional reason that, as Xentex's accountant, Turcotte owed a duty only to Xentex, not to plaintiffs. However, the facts regarding the nature of Turcotte's responsibilities and the precise circumstances of his creation and dissemination of Xentex's financial statements are not fully developed. If plaintiffs fail to point to any facts reflecting that Turcotte owed a duty to plaintiffs, defendants may move for summary judgment on that basis.

## CONCLUSION

For the foregoing reasons, Flanagan's motion to dismiss is granted in part and denied in part and the Xentex defendants' motion to dismiss is also granted in part and denied in part: (1) Plaintiffs' claim for accounting malpractice against Turcotte (Count XV) is dismissed, (2) plaintiffs' claim for aiding and abetting breach of fiduciary duty against Falese (Count XXXV) is also dismissed, and (3) plaintiffs' claims under the Virginia Securities Act (Counts XI, XII, XX, XXI, XXVII, XXVIII, XXXI, XXXII, XXXIII, and XXXIV) are dismissed without prejudice. Plaintiffs may file an amended complaint within 30 days of the entry of this order to remedy the deficiencies in their VSA claims as described herein.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: September 27, 2004