**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PREMIER CAPITAL MANAGEMENT, L.L.C., et al., | ) ) | |
| Plaintiffs, | ) | No. 02 C 5368 |
| v. | ) ) | JUDGE JOAN B. GOTTSCHALL |
| LARRY COHEN, et al., | ) | |
| Defendants. | ) ) | |
| | ) | |
| LARRY COHEN, et al., | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) ) | |
| DOUGLAS TUCKER, | ) | |
| Third-Party Defendant. | ) ) | |
| | ) | |
| DOUGLAS TUCKER, | ) | |
| Cross-Claimant/Fourth-Party Plaintiff, | ) | |
| v. | ) ) | |
| PREMIER CAPITAL MANAGEMENT, L.L.C. and MATHIEU REYNA, | ) ) | |
| Cross-Defendant, Fourth-Party Defendant. | ) ) | |
| | ) | |
| LARRY COHEN, et al., | ) | |
| Counterclaimants/Cross-Claimants, | ) | |
| v. | ) ) | |
| PREMIER CAPITAL MANAGEMENT, L.L.C. and MATHIEU REYNA, | ) ) | |
| Counterdefendant, Cross-Defendant. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PREMIER
AND REYNA'S RULE 56 MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiff/Counterdefendant/Cross-Defendant Premier Capital Management, LLC ("Premier") and Fourth-Party Defendant/Cross-Defendant Mathieu Reyna ("Reyna"), by their attorneys, Jenner & Block LLP, respectfully submit this Memorandum in Support of Premier and Reyna's Motion for Summary Judgment, and state as follows:

## INTRODUCTION

Beginning in November 2000 and continuing through much of 2001, Plaintiffs Xen Investors, LLC ("Xen"), TMB, LLC ("TMB"), and Premier invested millions of dollars in a start-up computer company known as Xentex Technologies, Inc. ("Xentex"). (SOF[1] at ¶¶ 18-19; Ex. 4, Xen. Dep. at 7:5-11, Xen Dep. Ex. 34, p. 11; Ex. 6, TMB Dep. Ex. 5.) Through a combination of literature, financial statements, and oral representations that Plaintiffs later discovered were filled with inaccuracies and misrepresentations, Xentex's officers and directors were able to mislead Plaintiffs into believing that Xentex had essentially completed the development and financing for its only product, the Voyager Double Screen Portable Computer ("Voyager"), and that Xentex owned millions of dollars in assets, including the more than $4 million of tooling required to mass produce Voyagers for public consumption. (SOF at ¶¶ 14-16; Ex. 1, TAC at ¶¶ 18, 29-32.) Unknown to Plaintiffs at the time, however, the Voyager was nowhere near completion and Xentex did not own the millions of dollars in tooling and other assets that it had represented to Plaintiffs that it did own prior to Plaintiffs' investments. (SOF at

---

[1] Pursuant to Local Rule 56.1, Premier and Reyna have separately filed "Premier and Reyna's Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment." References to facts supporting assertions made in this Memorandum in Support cite to the Statement of Facts (cited as "SOF at ¶ __"). As per the Court's Standing Order Regarding Motions for Summary Judgment, citations to the facts in this Memorandum in Support are also made to the Local Rule 56.1(a)(1) documents establishing the facts. A Table of Contents for the exhibits referenced herein, including the relevant abbreviations, may be found at the beginning of the exhibit book submitted concurrently with Premier and Reyna's Motion for Summary Judgment.

¶¶ 14-16; Ex. 1, TAC at ¶¶ 18, 29-32.) In the end, Xentex was never able to bring the Voyager to market, and Plaintiffs lost the entirety of their investments when Xentex ultimately went bankrupt in 2003. (SOF at ¶¶ 20-21; Ex. 1, TAC at ¶¶ 24-25.)

Plaintiffs have filed a twenty-two count Third Amended Complaint ("TAC") alleging that certain officers and directors of Xentex, including Defendants Larry Cohen ("Cohen"), Wan Hee Kim ("Kim"), and Michael Turcotte ("Turcotte"), made material misrepresentations to Plaintiffs in connection with Plaintiffs' investments in Xentex. (Docket # 164.) Among other claims, Plaintiffs have alleged that Defendants Cohen, Kim, and Turcotte are liable for Plaintiffs' losses under the Virginia Securities Act ("VSA"), Va. Code § 13.1-522(C), and that Turcotte is liable for negligent misrepresentation and constructive fraud. (Ex. 1, TAC at Counts II, III, XIII, XIV, XIX, and XX.)

In a brazen attempt to "blame the victims," Defendants Cohen, Kim, and Turcotte have filed an Amended Counterclaim/Third Party Complaint ("CKT Counterclaim") against Plaintiff Premier and its managing member, Reyna. (Docket # 294.) In Count I of the CKT Counterclaim, Defendants Cohen, Kim, and Turcotte seek contribution from Premier and Reyna for Cohen's, Kim's, and Turcotte's own violations of the VSA. In Count III,[2] Turcotte seeks contribution from Premier and Reyna for Turcotte's own negligent misrepresentation and constructive fraud.

In addition to the CKT Counterclaim, Cohen, Kim, and Turcotte have filed an Amended Third Party Complaint for Contribution ("CKT Tucker Complaint") against Third Party Defendant Douglas Tucker, who was also an officer and director of Xentex. (Docket # 187.) Among other claims, the CKT Tucker Complaint seeks contribution from Tucker for Turcotte's

---

[2] The CKT Counterclaim contains only two counts, Count I and Count III.

3

negligent misrepresentation and constructive fraud. (*See* CKT Tucker Complaint at Count III.) Tucker, in turn, has filed a Counterclaim/Third Party Complaint ("Tucker Counterclaim") against Premier and Reyna. (Docket # 192.) In Count III of the Tucker Counterclaim, Tucker alleges that if he is liable in contribution to Turcotte for negligent misrepresentation, then Premier and Reyna are liable to Tucker.[3]

For the reasons set forth below, Premier and Reyna are entitled to summary judgment with respect to Counts I and III of the CKT Counterclaim and Count III of the Tucker Counterclaim.

## FACTUAL BACKGROUND

On or around November 1, 2000, agents of Xentex traveled to the offices of Robert Copeland and Todd Copeland in Virginia Beach, Virginia for the purpose of seeking investments in Xentex. (SOF at ¶ 13; Ex. 1, TAC at ¶ 16.) The agents of Xentex included Jeffrey Batio ("Batio"), Tucker, and Peter Miranda ("Miranda"). (*Id.*) Other participants in the meeting included Robert and Todd Copeland, Reyna, and other associates of the Copelands and Reyna. (*Id.*)

At the meeting ("November 2000 meeting"), Batio and Tucker delivered a presentation designed to solicit investments in Xentex from the participants at the meeting. (SOF at ¶ 14; Ex. 1, TAC at ¶ 17.) As part of the presentation, Batio and Tucker stated that Xentex had essentially completed the development and financing for its first product, the Voyager, and that mass production of Voyager computers for sale to the general public was about to commence. (SOF at ¶ 14; Ex. 1, TAC at ¶ 18.) Plaintiffs have alleged that these representations were materially false. (*Id.*) Batio and Tucker also tendered to the meeting participants a written prospectus titled

---

[3] Following the submission of Premier and Reyna's Motion to Dismiss, the Court dismissed Counts I and II of the Tucker counterclaim. (See Docket # 261.)

4

Information Statement," which Batio and Tucker represented as reflecting the collective action of Xentex's active and participating officers and directors, including Defendants Cohen, Kim, and Turcotte. (SOF at ¶ 15; Ex. 1, TAC at ¶ 29(a).) Plaintiffs have alleged that the Information Statement contained multiple untrue statements of material fact pertaining to the status and development of the Voyager computer. (*Id.*) Attached to the Information Statement were financial statements prepared by Xentex's in-house accountant and Chief Financial Officer, Defendant Turcotte. (SOF at ¶ 16; Ex. 1, TAC at ¶ 29(b).) Plaintiffs have alleged that the financial statements prepared by Turcotte were materially false and misleading. (*Id.*) Plaintiffs have further alleged that, among other misrepresentations, the financial statements falsely represented that Xentex had over $5.3 million in assets, including $4.25 million in tooling. (*Id.*) Other misrepresentations made by Xentex during and shortly after the November 2000 meeting are identified in the TAC. (SOF at ¶ 16; Ex. 1, TAC at ¶¶ 29-32.)

As a result of the November 2000 presentation and subsequent representations made by Xentex, the Copelands formed an entity called "Xen Investors, LLC." (SOF at ¶ 17; Ex. 4, Xen Dep. at 6:15-7:11, 8:10-10:1, Xen Dep. Ex. 34, p. 6.) The sole purpose of Xen was to make a $1.2 million investment in Xentex, which Xen did in installments between November 2000 and February 2001. (SOF at ¶ 18; Ex. 4, Xen Dep. at 7:5-11, Xen Dep. Ex. 34, p. 11.)

In or around June 2001, Todd Copeland, Mathieu Reyna, and an associate of Todd Copeland's named Bruce Friedman formed an entity called "TMB, LLC." (SOF at ¶ 19; Ex. 6, TMB Dep. at 78:13-21, TMB Dep. Ex. 5, TMB Dep. Ex. 12, p. 5.) On or around June 4, 2001, TMB issued a $650,000 loan to Xentex in exchange for a promissory note and additional Xentex stock. (*Id.* at TMB Dep. Ex. 5.) Plaintiffs have alleged that, in soliciting the promissory note,

5

Xentex made multiple additional misrepresentations to the members of TMB, as identified in the TAC. (SOF at ¶ 19; Ex. 1, TAC at ¶¶ 31 and 32.)

During the entire time that Xentex was soliciting the foregoing investments from Plaintiffs, Defendants Cohen, Kim, and Turcotte were officers and/or directors of Xentex. (SOF at ¶¶ 6-8; Ex. 1, TAC at ¶¶ 4, 6, 8.) Cohen was a director, Turcotte was an officer, and Kim was both an officer and a director. (*Id.*) As represented to Plaintiffs, Cohen, Kim, and Turcotte each had a hand in creating the Information Statement, and Turcotte prepared the financial statements attached to the Information Statement. (SOF at ¶ 15-16; Ex. 1, TAC at ¶¶ 29(a)-29(b); Ex. 8, Turcotte Dep. at 83:21-85:24, 88:20-24.)

Despite the repeated representations by Xentex and its officers and directors that the tooling to manufacture Voyagers had been completed and that Xentex was on the cusp of mass producing Voyagers, the Voyager was never mass produced and Voyagers never became available for sale to the general public. (SOF at ¶ 20; Ex. 1, TAC at ¶ 24.) In March 2003, Xentex filed for protection under the bankruptcy laws of the United States, and Plaintiffs lost the entire value of their investments. (SOF at ¶ 21; Ex. 1, TAC at ¶ 25.)

**ARGUMENT**

Pursuant to the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

6

speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

As set forth below, the undisputed facts show that Premier and Reyna are entitled to summary judgment as a matter of law with regard to Counts I and III of the CKT Counterclaim and Count III of the Tucker Counterclaim.

**I.  PREMIER AND REYNA ARE ENTITLED TO SUMMARY JUDGMENT AS TO COUNT I OF THE CKT COUNTERCLAIM.**

Subsection A of Va. Code Ann. § 13.1-522 makes liable any person who sells a security by means of "an untrue statement of fact" or "any omission to state a material fact necessary in order to make the statement made . . . not misleading." Subsection C of that statute provides:

> C.  Every person who directly or indirectly controls a person liable under subsection A or B of this section, including every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and every broker-dealer, investment advisor, investment advisor representative or agent who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.  There shall be contribution as in cases of contract among the several persons so liable.

Va. Code Ann. § 13.1-522(C).

In the TAC, Plaintiffs alleged that Xentex violated subsection A by selling them securities by means of multiple untrue statements of material fact and by omitting to state multiple material facts.  (*See e.g.*, Ex. 1, TAC at ¶ 53.)  Plaintiffs further alleged that Defendants Cohen, Kim, and Turcotte are secondarily liable for those misrepresentations under subsection C because they were officers and/or directors of Xentex who knew of, or at the least reasonably

7

could have known of, the misrepresentations that constituted the primary violation under subsection A. (*See id.* at ¶¶ 54, 65, 167, 178, 230, 243.) Specifically, Counts II (Turcotte), XIII (Kim), and XIX (Cohen) of the TAC alleged that Cohen, Kim, and Turcotte violated subsection C with respect to Plaintiffs' initial stock purchases in late 2000 and early 2001. (*See id.*) Counts III (Turcotte), XIV (Kim), and XX (Cohen) alleged that Cohen, Kim, and Turcotte violated subsection C with respect to the promissory note and additional stock purchased by Plaintiffs in 2001. (*See id.*)

In Count I of their Counterclaim, Defendants Cohen, Kim, and Turcotte attempt to allege that they are entitled to contribution from Premier and Reyna (the victims) for Cohen's, Kim's, and Turcotte's own violations of the Virginia Securities Act ("VSA"). In Count I, they allege that Premier and Reyna "materially aided" in Xentex's conduct toward Plaintiffs "as stated in the Third Amended Complaint." (*See* CKT Counterclaim at ¶ 10.) Tellingly, Cohen, Kim, and Turcotte fail to include even a single fact that would support such a claim. Accordingly, Premier and Reyna are left guessing as to which conduct described in the TAC they are alleged to have aided, and how they are alleged to have aided it.[4]

### A. The Conduct Alleged In the Third Amended Complaint Does Not Support Contribution Liability Against Premier and Reyna.

The TAC was very specific concerning the misrepresentations made by Xentex that form the basis of Plaintiffs' claims against Cohen, Kim, and Turcotte. Paragraphs 29 and 30 set forth the specific misrepresentations made by Xentex in connection with Plaintiffs' initial stock purchase. And Paragraphs 31 and 32 set forth the specific misrepresentations made by Xentex in connection with Plaintiffs' purchase of additional stock and a promissory note in 2001. Paragraph 29(a), for example, alleged that Xentex tendered to Plaintiffs an Information

---

[4] Premier and Reyna's Motion to Dismiss Count I of the CKT Counterclaim, filed on March 28, 2006, has been fully briefed and is pending decision by the Court. (*See* Docket #'s 295, 299, and 302.)

8

Statement dated November 1, 2000 that contained multiple untrue statements of fact, including false representations about the development status of Xentex's only product, the Voyager computer. (Ex. 1, TAC at ¶ 29.) Paragraph 29(b) alleged that the Information Statement also included financial statements prepared by Turcotte, and that those financial statements were materially false and misleading because, among other reasons, they vastly overstated the value of Xentex's tooling and other assets. (*Id.*) Paragraph 29(c) alleged that Xentex made multiple false statements of material fact to Plaintiffs orally at the November 2000 meeting, including the false statement that there were no lawsuits pending against Xentex at the time. (*Id.*) And Paragraph 29(d) alleged that in the following weeks and months, Turcotte prepared, and Xentex distributed to Plaintiffs, additional false and misleading financial statements, budgets, and projections. (*Id.*) Plaintiffs cited additional, specific misrepresentations made by Xentex in Paragraphs 30, 31, and 32. (*Id.* at ¶¶ 30-32.)

Importantly, neither Premier nor Reyna are alleged to have had any role in making the misrepresentations identified in the TAC. In fact, the TAC specifically alleged that Plaintiffs (including Premier) were unaware of the falsity of those misrepresentations. (*Id.* at ¶¶ 29(e), 30 (d), 31(h), and 32(d).)

        **B.**    **There Is No Evidence to Support the Allegations in Count I of the CKT Counterclaim.**

The plain language of Va. Code § 13.1-522(C) makes clear that in order for Cohen, Kim, and Turcotte to establish even a *prima facie* case for contribution against Premier and Reyna, they must prove that Premier and Reyna materially aided Xentex in making the *particular* misrepresentations identified in Paragraphs 29 through 32 of the TAC, upon which Plaintiffs' claims under the VSA are based. As noted above, the CKT Counterclaim is utterly devoid of any allegation as to how Premier and Reyna supposedly aided Xentex in its conduct toward

9

Plaintiffs and, equally important, which specific conduct by Xentex that Premier and Reyna are alleged to have aided. Nevertheless, the undisputed facts show that Premier and Reyna did not materially aid Xentex in making any of the specific misrepresentations identified in the TAC.

Exhibit 9 is an affidavit signed by Mathieu Reyna on behalf of himself and Premier. In the affidavit, Reyna swears under oath that neither he nor Premier were contemporaneously aware of the falsity of any of the misrepresentations identified in Paragraphs 29 through 32 of the TAC and that to his knowledge neither he nor Premier provided any material aid to Xentex in making those misrepresentations. Attached hereto as Exhibits 10 and 11 are affidavits signed by Robert Copeland and Todd Copeland. In their affidavits, the Copelands swear that to their knowledge neither Premier nor Reyna ever materially aided Xentex in making the misrepresentations identified in Paragraphs 29 through 32 of the TAC. Accordingly, the principals of Premier, Xen, and TMB (the three Plaintiffs in this action) all agree that neither Premier nor Reyna played any role in making the misrepresentations alleged in the TAC.

These affidavits are entirely consistent with the undisputed facts as they emerged in discovery. Although Xentex offered and Premier accepted a 10% commission on the funds Xentex received from Xen, (SOF at ¶ 26; Ex. 2, PCM Dep. at 128:4-14, 199:8-10, PCM Dep. Ex. 12), the undisputed facts show that Premier and Reyna played no role whatsoever in Xen's decision to invest in Xentex and that Xen never relied upon any information provided by Premier or Reyna. (SOF at ¶ 27; Ex. 7, T. Copeland Dep. at 256:18-257:6.) Neither Premier nor Reyna ever gave Xen any advice about investing in Xentex. (SOF at ¶ 28; Ex. 2, PCM Dep. at 115:11-23; Ex. 4, Xen Dep. at 31:13-17; Ex. 7, T. Copeland Dep. at 84:15-17.) Neither Premier nor Reyna ever gave any assistance to Xen in connection with its investment in Xentex. (SOF at ¶ 29; Ex. 3, Reyna Dep. at 265:19-266:3.) They never made a recommendation to Xen regarding

10

the type of research it should perform. (SOF at ¶ 30; Ex. 2, PCM Dep. at 152:19-22.) And they never tried to persuade or induce Xen to invest any money in Xentex. (SOF at ¶ 31; Ex. 7, T. Copeland Dep. at 257:7-10.) In fact, Robert Copeland (the manager of Xen) expressed Premier's and Reyna's involvement in Xen's investment thusly: "Matt Reyna never defrauded me. He never represented one thing about the machine, about the company, about life. He never said any fact relating to production, any fact relating to tooling, any fact relating to anything. He never advised me on any issue." (SOF at ¶ 32; Ex. 5, R. Copeland Dep. at 137:23-138:4.)

Accordingly, it is undisputed that neither Premier nor Reyna played any role in Xen's decision to invest in Xentex and that neither Premier nor Reyna played any role in making the misrepresentations identified in Paragraphs 29 through 32 of the TAC to *any* of the Plaintiffs, including Plaintiffs Xen and TMB. In the absence of any countervailing facts, Premier and Reyna are entitled to summary judgment with respect to Count I of the CKT Counterclaim.

## II. PREMIER AND REYNA ARE ENTITLED TO SUMMARY JUDGMENT AS TO COUNT III OF THE CKT COUNTERCLAIM.

Count V of Plaintiffs' TAC stated a claim against Turcotte for negligent misrepresentation and constructive fraud. Specifically, Plaintiffs alleged that Turcotte (1) negligently made the false statements of material fact in the Information Statement, and (2) negligently made the false statements of material fact contained in the financial statements that Turcotte prepared and that Xentex tendered to Plaintiffs, including the financial statements attached to the Information Statement. (*See* Ex. 1, TAC at ¶ 82, and ¶¶ 29(a)-(b), 29(d), and 31 (a)-(c), as referenced therein.)

In Count III of the CKT Counterclaim, Turcotte seeks contribution from Premier and Reyna for Turcotte's own negligent misrepresentation and constructive fraud. But Turcotte fails to include in his Counterclaim any facts in support of his claim, choosing instead to assert in

11

conclusory fashion merely that "Turcotte is entitled to and asserts a right of contribution from Premier and Reyna for all claims against him for negligent misrepresentation." (CKT Counterclaim at ¶ 14.)

Under the law of both Virginia and Illinois, contribution is available only where both the party seeking contribution *and* the party from whom contribution is sought are both liable to a third party for the same indivisible injury. *See Ohio Cas. Ins. Co. v. State Farm Fire and Cas. Co.*, 546 S.E.2d 421, 423 (Va. 2001); *Canterbury Assocs., Ltd. v. McLaughlin*, 26 Va. Cir. 217, 225-26 (Vir. Cir. Ct. 1992); 740 ILCS 100/2(a) (Illinois Joint Tortfeasor Contribution Act).[5] Accordingly, in order for Turcotte to establish a *prima facie* case for contribution, he must show that Premier and Reyna are subject to liability to Xen and/or TMB for the same misrepresentations that form the basis of Plaintiffs' claims against Turcotte.

Here, Turcotte's own deposition testimony makes clear that neither Premier nor Reyna could have contributed to Turcotte's negligent misrepresentation and constructive fraud as identified in the TAC. Turcotte testified, for example, that he alone created the financial statements tendered to Plaintiffs, (SOF at ¶ 33; Ex. 8, Turcotte Dep. at 83:21-85:24, 88:20-24), and that he refused even to discuss the financial statements with Reyna, (SOF at ¶ 34; Ex. 8, Turcotte Dep. at 18:18-20:18). The undisputed facts show that neither Premier nor Reyna played any role in preparing any part of the Information Statement tendered to Plaintiffs, (SOF at ¶ 35; Ex. 9, Reyna Aff. at ¶ 6), and that, to the best of Xen's knowledge and TMB's knowledge, neither Premier nor Reyna contributed to Turcotte's misrepresentations as alleged in the TAC,

---

[5] Plaintiffs are domiciled in Virginia. (SOF at ¶¶ 1-3; Ex. 1, TAC at ¶¶ 1-3.) Turcotte is domiciled in Illinois. (SOF at ¶ 8; Ex. 1, TAC at ¶ 8.) Because Virginia law is in accord with Illinois law on the requirements for a contribution claim, however, it is not necessary to determine which state's contribution standard applies to Turcotte's claim for contribution.

(SOF at ¶¶ 24-25; Ex. 10, R. Copeland Aff. at ¶ 4; Ex. 11, T. Copeland Aff. at ¶ 4; Ex. 9, Reyna Aff. at ¶ 5).

In short, there is no evidence to suggest that Premier and Reyna would be liable to Xen and/or TMB for Turcotte's negligent misrepresentation and constructive fraud. Accordingly, Premier and Reyna are entitled to summary judgment as to Count III of the CKT Counterclaim.

### III. PREMIER AND REYNA ARE ENTITLED TO SUMMARY JUDGMENT AS TO COUNT III OF THE TUCKER COUNTERCLAIM.

Turcotte has filed a claim against Tucker for contribution for negligent misrepresentation. Tucker, in turn, has filed a claim for contribution against Premier and Reyna alleging that if he is found liable to Turcotte, Premier and Reyna should be liable to him. For the same reasons set forth in Part II, above, there is no evidence that Premier and Reyna are liable to Xen and/or TMB for Turcotte's negligent misrepresentation and constructive fraud. Accordingly, and regardless of whether Tucker is liable in contribution to Turcotte, Premier and Reyna cannot be liable in contribution to Tucker. *See Ohio Cas. Ins. Co. v. State Farm Fire and Cas. Co.*, 546 S.E.2d 421, 423 (Va. 2001); *Canterbury Assocs., Ltd. v. McLaughlin*, 26 Va. Cir. 217, 225-26 (Vir. Cir. Ct. 1992); 740 ILCS 100/2(a) (Illinois Joint Tortfeasor Contribution Act).

Premier and Reyna are thus entitled to summary judgment as to Count III of the Tucker Counterclaim.[6]

---

[6] Premier and Reyna do not here express any opinion as to the merits of Turcotte's claim for contribution against Tucker.

**Conclusion**

WHEREFORE, for the reasons set forth above, Premier and Reyna are entitled to summary judgment as to Counts I and III of the CKT Counterclaim and Count III of the Tucker Counterclaim.

Respectfully submitted,

Premier Capital Management, LLC, and Mathieu Reyna


By: *s/Howard S. Suskin*
      One Of Their Attorneys

Dated: February 1, 2007

Howard S. Suskin (Illinois Bar #6185999)
Marc D. Sokol (Illinois Bar #6276263)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350