UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PREMIER CAPITAL MANAGEMENT, LLC, TMB, LLC, and XEN INVESTORS, LLC <br><br> Plaintiffs, <br><br> v. <br><br> LARRY COHEN, BRIAN FLANAGAN, WAN HEE KIM, JUNG KOH, MICHAEL TURCOTTE, RON FALESE, BLAIR ROBINSON, NORTHVIEW BANK & TRUST, and XENTEX TECHNOLOGIES, INC.[1] <br><br> Defendants. | Case No. 02 C 5368 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Premier Capital Management, LLC ("Premier"), TMB, LLC ("TMB") and Xen Investors, LLC ("Xen") (collectively "Plaintiffs"), have filed a twenty-two count third amended complaint claiming violations of federal and state securities laws, as well as several state common laws. Plaintiffs allege, among other things, that the officers and directors of Xentex Technologies, Inc. ("Xentex") committed various statutory and common law violations when they induced Plaintiffs to invest in Xentex despite its precarious financial situation. These

---

[1] This is the caption per the original complaint. The court granted Plaintiffs' motion to dismiss without prejudice Xentex Technologies, Inc. on March 26, 2003 after Xentex filed for Chapter 11 bankruptcy. Plaintiffs dismissed defendant Ron Falese on October 28, 2004 with their third amended complaint. Defendant Jung Koh, named in Counts XVII-XVIII, has never appeared in the past six years of litigation and Plaintiffs have never moved to default him. Two other parties joined the case during litigation: Mathieu Reyna ("Reyna"), counter-defendant, and Douglas Tucker, third party defendant. The court denied a motion for summary judgment on the counterclaims, filed by Premier and Reyna, on September 13, 2007.

1

directors and officers were Larry Cohen ("Cohen"), Wan Hee Kim ("Kim"), Michael Turcotte ("Turcotte"), and Brian Flanagan ("Flanagan"). Plaintiffs also allege that Northview Bank & Trust ("Northview"), Xentex's bank, and its president, Blair Robinson ("Robinson"), aided and abetted that inducement by providing an environment in which Jeffrey Batio ("Batio"), the founder of Xentex, could misappropriate corporate funds. The various defendants have filed motions for summary judgment. Before the court is the motion of defendants Robinson and Northview for summary judgment on Counts XXI-XXII: aiding and abetting a breach of fiduciary duty.[2] For the reasons stated below, the court grants defendants' motion.

## I. BACKGROUND

Northview is an Illinois banking institution. Defs.' Statement of Facts ¶ 11.[3] Robinson was, at all relevant times, its President. *Id.* at ¶ 12. Robinson and Northview had a long-standing personal relationship with Batio. Pls.' Statement of Facts ¶¶ 1-2. Robinson was Xentex's personal banker. *Id.* at ¶ 2. Robinson and Northview knew that Batio owed a fiduciary duty to the shareholders of Xentex. *Id.* at ¶ 9. Northview maintained an escrow account on behalf of Xentex into which Plaintiffs' investment monies were transferred. *Id.* ¶ 29. Robinson and Northview allowed Xentex to overdraw its accounts. *Id.* ¶ 5. They also processed transfers between Xentex's accounts and Batio's personal accounts and withdrawals from Xentex's accounts that were payable to Batio personally. *Id.* ¶¶ 11-12. Robinson did not implement

---

[2]Defendants Cohen, Kim, and Turcotte have moved for summary judgment on Counts I-VI, XII-XVI, and XIX-XX and defendant Flanagan has moved for summary judgment on Counts VII-XI.

[3]Facts cited to the parties' Rule 56.1 statements of material facts are undisputed unless otherwise noted. The court has not considered inferences and qualifications inserted in the statements of fact in violation of its standing order.

controls requested by certain officers or directors of Xentex to stop the transfers and withdrawals.  *Id.* ¶¶ 22-23.

## II. ANALYSIS

### A. Summary Judgment Legal Standard

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  It is not appropriate if a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."  *Id.* at 325.

In response, the non-moving party cannot rest on the pleadings, but must designate specific material facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.  It must make a "sufficient showing of evidence for each essential element of its case on which it bears the burden at trial."  *Salas v. Wis. Dep't of Corrs.*, 493 F.3d 913, 921 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 322-23).  The court must view the record, and any inferences to be drawn from it, in the light most favorable to the opposing party.  *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991).

**B.     Plaintiffs' Claim for Aiding and Abetting a Breach of Fiduciary Duty**[4]

Plaintiffs allege that both Robinson and Northview, in Counts XXI and XXII respectively, aided and abetted a breach of fiduciary duty by Batio.  In a previous ruling, the court dismissed claims against Robinson and Northview to the extent that they "are premised on Batio's conduct prior to plaintiffs' initial stock purchase" because "no claims premised on breach of fiduciary duty c[an] be maintained based on conduct before . . . there was an actual director-shareholder relationship."  Order at 3 n.1 (Mar. 6, 2006).  It also dismissed as derivative any claim based on Batio's misappropriation of funds.  *Id.* at 4.  Thus, Plaintiffs' claims may be based on Robinson and Northview's conduct only as it relates to Batio's inducement of additional investments *after* a director-shareholder relationship had been established.

To state a claim for aiding and abetting,[5] a party must show: "(1) the party whom the

---

[4]The court has not considered the material contained in Robinson and Northview's "supplemental statement of undisputed material facts," which the defendants tendered in reply to Plaintiffs' Rule 56.1(b)(3) additional statement of undisputed material facts.  The rules provide that "[i]f material facts are submitted by the opposing party . . ., the moving party may submit a concise reply in the form prescribed in [56.1(b)(3)]."  Local Rule 56.1(a).  Robinson and Northview seem to read this as allowing them to add statements of material fact on reply; however, it permits only "additional facts *that require the denial of summary judgment.*"  *See id.* 56.1(b)(3)(C).  It does not allow the movant to make successive filings of statements of fact to which the non-movant has no opportunity to respond.  *See Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989) ("It is well-settled that new arguments cannot be made for the first time in reply.  This goes for new facts too.") (internal citations omitted).

[5]When this case commenced (in 2002), it was unclear as to whether Illinois law recognized the tort of aiding and abetting a breach of fiduciary duty.  *See* Order at 5 (Aug. 14, 2003) (noting the split in case law).  Subsequently, it has become clear that it does.  *See In re Nanovation Tech., Inc.*, 364 B.R. 308, 344-45 (N.D. Ill. 2007) (gathering recent cases allowing a claim for aiding and abetting a breach of fiduciary duty); *see also Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (noting that "[r]ecent Illinois decisions recognize aiding and abetting liability" and that there is liability, even if it is not an independent tort, because "aiding and abetting is a theory for holding the person who aids and abets liable for the tort itself"); *In re Parmalat Sec. Litig.*, 377 F. Supp. 2d 390, 413 (S.D.N.Y. 2005) (observing that Illinois courts

4

defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *See Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. 2003) (quoting *Wolf v. Liberis*, 505 N.E.2d 1202 (Ill. App. 1987)) (applying the test to determine whether defendant attorneys had aided and abetted a client's breach of fiduciary duty).[6] In this case, "defendant" is Robinson and Northview, "the party whom the defendant aid[ed]" is Batio, and the "principal violation"/"tortious activity" is the breach of fiduciary duty (specifically, inducement to purchase additional stock in Xentex).

1.  TMB's Claims

Robinson and Northview argue that summary judgment should be granted as to TMB because it invested only once with Xentex, through a loan issued in exchange for a promissory note which was repayable in stock, which means that there were no *additional* investments made after the director-shareholder relationship had been established. Mem. in Supp. of Defs.' Mot. for Summ. J. at 11-12 (citing to Defs.' Statement of Facts ¶¶ 35, 36). Plaintiffs do not dispute

---

recognize the tort of aiding and abetting a breach of fiduciary duty and that they "follow[] Section 876 of the Restatement (Second) of Torts in imposing civil aiding and abetting liability"). However, most of the cases deal with motions to dismiss and do not provide guidance on how to apply the law in any depth.

[6]Plaintiffs cite to this court's opinion of August 14, 2003, which was entered a month before the *Thornwood* opinion, regarding a motion to dismiss Plaintiffs' aiding and abetting claims. Plaintiffs wrongly designate a section of the opinion that discussed the requirements of the Illinois Fiduciary Obligations Act, 750 Ill. Comp. Stat. 65/1 ("IFOA"), as a holding outlining what kind of behavior would constitute aiding and abetting in this case. The court simply considered the IFOA in order to determine if Plaintiffs had stated a claim upon which relief could be granted. *Id.* at 6. The statements regarding pleading standards have no bearing on a motion dealing with the merits of the claims such as this one.

that only one transaction – the loan of money to Xentex by TMB in exchange for the promissory note – took place between Xentex and TMB. Pls.' Statement of Facts ¶ 26.

Instead, Plaintiffs attempt to establish that Batio owed a fiduciary duty to TMB *before* TMB made the loan in exchange for the promissory note. Their argument is based on a series of tenuous factual connections and an overreaching legal argument that stretches the concept of fiduciary duty beyond its breaking point. *See* Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. at 10-11. Plaintiffs' logic goes something like this: (1) Xen invested in Xentex; (2) when Xen invested in Xentex, Batio established a fiduciary relationship with Xen; (3) Todd Copeland ("Copeland") was a principal of Xen; (4) therefore, Batio owed a fiduciary duty to Copeland; (5) Copeland was also a principal of TMB; (6) Batio had a fiduciary relationship with Copeland, *as a principal of TMB*, by virtue of his existing fiduciary relationship with Copeland, *as a principal of Xen*; (7) therefore, Batio had a fiduciary relationship with TMB; (8) TMB made a loan in exchange for a promissory note; (9) Batio breached his fiduciary duty to TMB by encouraging it to make the loan. Step six is where the argument begins to fall apart. Plaintiffs point the court to no cases supporting the argument that a fiduciary relationship extends beyond the borders of the corporate entity with which it was originally formed.[7] The court declines to find one here.

As the court has previously held, Plaintiffs' claims can be maintained only based on conduct that occurred *after* the establishment of an actual director-shareholder relationship

---

[7]The one case Plaintiffs cite does not extend the fiduciary duty as far as Plaintiffs wish. It simply states that, under Wisconsin law, a fiduciary's duty runs not only to a shareholder that is a itself a corporation (a "corporate shareholder"), but also to the shareholders of that corporate shareholder. *See Havlicek/Fleisher Enters., Inc. v. Bridgeman*, 788 F. Supp. 389, 401 (E.D. Wis. 1992) (observing that a director and owner of a company "owed a fiduciary duty to the [corporate] shareholder [that] necessarily extended to [the corporate shareholder's] individual shareholders"). Thus, it supports step four of Plaintiffs' argument, but not step six.

because no fiduciary duty was owed to them before this time. Without reaching the issue of whether a promissory note that provides for a loan to be repaid in stock constitutes a purchase of stock, the court concludes that the loan transaction is the first point at which the director-shareholder relationship could have begun between TMB and Xentex. Therefore, no fiduciary relationship between Batio and TMB could have existed prior to Xentex's issuance of the promissory note. Plaintiffs do not dispute that TMB purchased no stock after it lent Xentex money and received Xentex's promissory note (which was repayable in stock) as security. They have therefore failed to establish an issue of material fact regarding Batio's breach of fiduciary duty to TMB, which means no reasonable jury could find for TMB on a claim for aiding and abetting against Robinson and Northview. Robinson and Northview's motion is granted as to TMB.

    2.    <u>Xen's Claims</u>

Robinson and Northview argue that summary judgment is appropriate against Xen because "all claims based on [Batio's] alleged misappropriation have been dismissed" and Xen has no proof that Robinson or Northview "knowingly provided any substantial assistance or encouragement to [Batio] to [induce Plaintiffs to make continuing investments in Xentex]." Defs.' Reply at 20; Mem. in Supp. of Mot. by Defs.' for Summ. J. at 10.

The parties do not dispute that Xen initially invested in Xentex in November 2000 and incrementally purchased additional stock until February 2001, for a total value of $1.2 million. Pls.' Statement of Facts ¶ 25. There is a genuine issue of material fact regarding whether Batio "performed a wrongful act that caused an injury," by providing information that induced Xen to continue investing in Xentex. *Compare* Defs.' Statement of Facts ¶ 30 (affidavit of Copeland

7

stating that the same information was relied on for additional investments as was relied on for the original investment), *with* Pls.' Statement of Facts ¶ 28 (affidavit of Copeland stating that Batio "constantly" reaffirmed and supported the contents of the Information Statement on which the Plaintiffs had originally relied in emails and other communications). Thus, the sole remaining question is whether Plaintiffs can survive summary judgment on the issue of Robinson and Northview's conduct as it relates to Batio's inducement of investments after November 2000.

In *Thornwood*, the court reversed the dismissal of a claim of aiding and abetting a breach of fiduciary duty. *Thornwood*, 799 N.E.2d at 759. Plaintiff, Thomas A. Thornton ("Thornton") had sued defendant law firm, Jenner & Block, as well as his ex-business partner, James Follensbee ("Follensbee"), after he had been shut out of a profitable deal. *Id.* Thornton and Follensbee had formed Thornwood Venture Limited Partnership ("Partnership") to develop Thornton's farm as a residential community and golf course. *Id.* at 760. Despite Thornton's investment of more than $8 million in the Partnership, Follensbee's attempts to attract commitments from interested parties, primarily the PGA, had failed. *Id.* After Follensbee had notified Thornton that the PGA's "involvement in the development project was not feasible," he continued to negotiate a deal, in secret, that would significantly increase the value of the partnership. *Id.* at 760-61. Follensbee retained Jenner & Block to help him buy out Thornton's partnership interest and to negotiate with the PGA and other investors. *Id.* at 761. Jenner & Block drafted a settlement agreement between Follensbee and Thornton that included a release for breach of fiduciary duties and non-disclosure of opportunities regarding the Partnership finances. *Id.* Thornton also executed a release that relieved Jenner & Block from any claims.

8

*Id.* Four years after he signed the releases, Thornton found out about Follensbee's negotiations and brought suit. *Id.* at 762.

The court concluded that Thornton could state a claim against Jenner & Block because he had raised issues regarding whether the releases were void because of the possible fraud involved in Follensbee's failure to disclose negotiations to Thornton, his partner. *Id.* at 766. The court observed:

> While such a result might seem unfair to an innocent party who was released and had no knowledge of the underlying fraud that later invalidated the release, we are not faced with such a case here and our decision should not be construed to have decided such a case. Instead, Jenner & Block was involved in the drafting of the releases in question and, allegedly, in the acts underlying Follensbee's fraud. The very insertion of the clause in the settlement agreement that purports to release certain fiduciary duties between Follensbee and Thornton . . . indicates an awareness that breaches of fiduciary duty may have occurred . . . .

*Id.* at 766-67. In discussing the requirements to state a claim against the law firm for aiding and abetting its client's breach of fiduciary duty, the court observed:

> Certainly . . . mere receipt of copies of letters authored by Follensbee, which expose his breach of fiduciary duty, probably does not constitute aiding and abetting under Illinois law. Here, however, Thornton . . . alleges that Jenner & Block aided and abetted by knowingly and substantially assisting Follensbee in breaching his fiduciary duty by[:] (1) communicating the competitive advantages available to the Partnership . . . to other parties, but specifically not to Thornton; (2) expressing Follensbee's interest in purchasing Thornton's interest in the Partnership and negotiating the purchase of that interest without disclosing to Thornton the continued negotiations . . . ; (3) reviewing and counseling Follensbee with regard to the production of investment offering memoranda, financial projections, and marketing literature, which purposely failed to identify Thornton as a partner; and (4) drafting, negotiating, reviewing, and executing documents, including the [releases], relating to the purchase of Thornton's interest . . . with knowledge that Thornton was not aware of [future plans]. All of these acts are alleged to have been perpetrated by Jenner & Block while it had knowledge that Thornton and Follensbee were partners, that Follensbee had a duty to disclose [plans] to Thornton, and that Follensbee did not disclose [plans] to Thornton despite having the opportunity and duty to do so.

9

*Id.* at 768-69. The enumerated acts that the court discusses all indicate the defendant had an intimate knowledge of both the fiduciary's relationship to the plaintiff and of the tortious acts the fiduciary was committing against the plaintiff, and was actively involved in furthering those tortious acts. Thus, to be liable, the defendant had to be knowingly involved in substantially assisting another to commit a tortious act. *See also* Restatement (Second) of Torts § 876(b) (1979) ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . .").

Applying the three-part *Thornwood* test for aiding and abetting to the specific facts at hand, to prevail in their claim, Plaintiffs must show that Robinson and Northview: (1) knew that Batio was a fiduciary to Plaintiffs and that he was breaching his fiduciary relationship by inducing stockholders to purchase additional stock when the company was in financial trouble; (2) were aware that their business activities were helping Batio induce investors to buy stock in Xentex; and (3) knowingly and substantially assisted in the inducement.

> Plaintiffs outline their theory of liability as follows:
>
> Batio breached his fiduciary duty to Xen Investors (once it had invested) by inducing it to continue investing in Xentex even though Batio knew the invested funds would be misappropriated. This breach of fiduciary duty required Batio to know that the funds were likely to be misappropriated, and [Robinson and Northview] armed Batio with that knowledge by continuously allowing him to misappropriate funds already invested.

Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. at 5. They expand on how Robinson and Northview aided and abetted Batio's inducement as follows:

> Defendants [Robinson and Northview] knowingly and substantially assisted in that violation in at least three ways. First, [they] set up and maintained the escrow account at Northview thorough which the newly invested funds were

10

> routed, thus providing Batio with the means to procure the new investments. [They] did this knowing that the invested funds were likely to be misappropriated. Second, [Robinson and Northview] knowingly violated bank policy by allowing Xentex to overdraft [sic] its general operating account by tens of thousands of dollars in the months preceding Xen Investors' investments. By keeping the account open instead of closing it as they were supposed to do, [they] facilitated Batio's scheme to induce Xen Investors to invest in Xentex under false pretenses because they left open the account from which Batio intended to misappropriate those investments. Third, [Robinson and Northview] knowingly engaged in a course of conduct that provided Batio with the knowledge that he could misappropriate invested funds at his discretion.

*Id*. Plaintiffs argue that "[Robinson and Northview's] assistance in helping Batio to misappropriate corporate funds is relevant to Plaintiffs' claims because . . . that assistance played a central role in establishing the false pretenses by which Batio was able to induce Plaintiffs to continue investing in Xentex." *Id.* at 2.

Arguably, Plaintiffs' allegations regarding the history and scope of Batio's misappropriation of funds raise a question of material fact as to whether Robinson and Northview knowingly helped Batio to misappropriate company funds. But, that is not Plaintiffs' claim here. To survive summary judgment, Plaintiffs need to establish a triable issue of fact regarding whether Robinson and Northview knowingly and substantially helped Batio *induce additional investments from existing shareholders*. However, Plaintiffs fail to do more than present facts and arguments that relate to Batio's alleged *misappropriation* of funds and fail to raise a question of material fact regarding whether Robinson and Northview's actions substantially assisted Batio's *inducement* of funds. Plaintiffs attempt to conflate the two types of breach of fiduciary duty, arguing that Robinson and Northview aided and abetted by failing to intervene in the misappropriation and "providing Batio with the means to procure new investments." Pls.' Response in Opp'n to Defs.' Mot. for Summ. J. at 5, 8. But Plaintiffs fail to

show that Northview and Robinson were doing anything other than their jobs when they extended overdrafts, set up escrow accounts, provided debit cards, and processed fund transfers. Even if Robinson and Northview acted improperly in failing to stop Batio from misappropriating funds, an issue that the court is not deciding, it does not help Plaintiffs defeat summary judgment because the issue is the inducement of additional stock purchases. Plaintiff's argue that the lack of restriction on Batio's banking activities gave Batio a sense of security that he could continue to misappropriate Xentex's funds and he induced new investments because he knew he could misappropriate those funds too. But Plaintiffs present only supposition, not questions of material fact, that Northview and Robinson knew that their banking actions would facilitate the specific breach of fiduciary duty at issue here, namely inducement of additional investments.

The behaviors alleged here are not like those enumerated in *Thornwood*. It is undisputed[8] that Robinson and Northview were not officers or directors of Xentex, did not prepare any documents that the Plaintiffs reviewed in making their investment decisions, did not attend meetings with Xentex and Plaintiffs, did not know what information Xentex provided to Plaintiffs, and did not communicate with or provide advice to the Plaintiffs. Pls.' Resp. to Defs.' Statement of Facts ¶¶ 14, 17, 19, 24-26, 31, 40. Plaintiffs argue that the fact that investments being wired into accounts held at Northview proves that the bank "communicated" with Plaintiffs and knew that Batio was selling additional stock, and the fact that Xentex's solicitation documents contained banking information shows that Robinson and Northview were

---

[8]Plaintiffs "dispute in part" many of these paragraphs and frequently makes inappropriate inferential arguments as part of their response to defendants' statements of fact. The court has assumed that where the portions of statements of fact are not directly disputed, they are undisputed.

12

involved and aware that Xentex was selling additional stock to existing shareholders. *See id.* ¶¶ 14-15, 30, 40. However, no reasonable jury could find in favor of the Plaintiffs on such tenuous inferences, especially where the undisputed facts show that Robinson and Northview had no direct involvement in sale of additional stock. Unlike Jenner & Block's behavior in *Thornwood*, Northview and Robinson's behavior is not active and direct; it is passive and indirect, and that is not enough to sustain an aiding an abetting a breach of fiduciary duty claim. The *Thornwood* court cautioned against expanding aiding and abetting liability to parties who were simply doing their jobs and performing tasks that they typically performed in the course of business. Therefore, the court declines to find a cause of action against a bank and its President for a customer's tortious conduct absent concrete evidence of knowing and active involvement.

Plaintiffs' argument is, notwithstanding attempts to make it more complicated, at most a claim for aiding and abetting misappropriation of corporate funds, which the court has already dismissed as derivative. They fail to allege sufficient facts to prevail on a claim of aiding and abetting a breach of fiduciary duty where that breach is the inducement to invest. "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex Corp.,* 477 U.S. at 322). Plaintiffs have failed to make such a showing here. Therefore, Robinson and Northview's motion for summary judgment as to Xen is granted**.**

3. Premier's Claims

Robinson and Northview argue that, even if Plaintiffs' allegations are proven, Plaintiffs show only that Robinson and Northview facilitated Batio's misappropriation of corporate funds,

13

which is an already-dismissed derivative claim.  Mem. in Supp. of Summ. J. at 15-16.  For the reasons stated above as to Xen, the court agrees.  Plaintiffs argue the same bases for their claim in regard to Premier as they do in regard to Xen, which the court has concluded are insufficient to allow a reasonable jury to find in Plaintiffs favor on the issue of aiding and abetting a breach of fiduciary duty.  Therefore, for the same reasons as Xen, Robinson and Northview's motion as to Premier is granted.

### III.  CONCLUSION

For the reasons stated above, the court grants defendants' motion for summary judgment on Counts XXI-XXII.  Accordingly, defendants Blair Robinson and Northview Bank and Trust are dismissed from the case.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 24, 2008